DAVIS, Judge
(concurring in part and dissenting in part):
1 12 I agree with the majority's conclusion that the district court did not abuse its discretion in determining that the unofficial transcript proffered by Fox Construction was inadmissible, as well as the majority's analysis of that issue. However, I disagree with the majority that the district court exceeded its discretion in refusing to permit Fox Construction to obtain an official transeript after the unofficial version was rejected.
13 "[TJrial courts have broad discretion in matters of discovery." Daniels v. Gamma W. Brachytherapy, LLC, 2009 UT 66, ¶ 54, 221 P.3d 256 (internal quotation marks omitted) (affirming the district court's exercise of discretion in denying a defendant's motion to amend an expert's deposition). "[The exercise of discretion ... necessarily reflects the personal judgment of the court and the appellate court can properly find abuse only if . no reasonable [person] would take the view adopted by the trial court." State v. Butterfield, 2001 UT 59, ¶ 28, 27 P.3d 1133 (alterations in original) (internal quotation marks omitted). Under the cireumstances presented in this case, I do not believe the position adopted by the district court was unreasonable.
1 14 Even when Fox Construction became aware that the unofficial transcript it provided the court might be deemed inadmissible, it failed to obtain an official transeript, offering to do so only if the district court were inclined to rule against it on the motion to strike. I do not think it is appropriate for a litigant to wait out the district court's decision on an issue and then attempt to cure the problem once the district court has ruled against it. Cf. Performance Autoplex II Ltd. v. Mid-Continent Cas. Co., 322 F.3d 847, 862 (5th Cir.2003) (per curiam) (stating that although the district court could permit a party to supplement the record after the magistrate had made a recommendation concerning summary judgment, litigants would not be permitted to "use the magistrate judge as a mere sounding-board for the sufficiency of the evidence," and affirming the district court's refusal to permit the plaintiff to supplement the record when the plaintiff "waited to offer [the supplemental] evidence until after it was clear that summary judgment for [the defendant] would be granted" (internal quotation marks omitted)). To require the district court to permit such a cure sets an unfortunate precedent that I fear will permit litigants to take a "wait and see" approach to discovery and case preparation. Such an approach is contrary to the interests of judicial economy, and is likely to delay the resolution of cases and unnecessarily subject litigants to uncertainty as to the finality of the district court's admissibility rulings.[1]
*826 1 15 If Fox Construction wanted to ensure that the evidence in the transeript would be considered, it should have provided the district court with a copy of the official tran-seript before the district court ruled on the motion to strike. Onee Fox Construction instead elected to defend the admissibility of the unofficial transcript, I do not believe it was necessary for the district court to give Fox Construction a further opportunity to obtain an official transcript. Cf. Chen v. Stewart, 2004 UT 82, ¶ 48, 100 P.3d 1177 (explaining that "objection[s] should be made to the judge at the earliest possible opportunity" and that parties will not be permitted "to obtain a second bite at the apple by withholding [an] objection" until after a decision is made (internal quotation marks omitted); Keiter v. Keiter, 2010 UT App 169, ¶ 28, 235 P.3d 782 (emphasizing that the parties would "not get a second bite at the evidentiary apple" when an issue was remanded to the district court, despite inadequacies in the evidence presented at trial).
1 16 It is also not apparent from the record whether Fox Construction ever actually attempted to have an official transcript submitted into evidence or whether the district court specifically prohibited Fox Construction from doing so. Fox Construction asserts that "the court could have, and likely should have granted an opportunity for the defendant to obtain an official transcript" after striking the unofficial transcript. However, Fox Construction has not referred us to anything in the record indicating that it sought such an opportunity apart from a passing comment in its memorandum opposing the motion to strike, in which it offered to "obtain an official transeript" "[ilf the Court so desivre[d]." But apparently, not having first been given the green light from the district court, Fox Construction elected not to make any formal attempt to submit an official version of the transcript. Instead, Fox Construction continued pursuing its argument that the unofficial transcript should have been admitted, both by renewing its argument in its objection to the proposed order and by challenging the district court's ruling on the motion to strike on appeal.[2]
17 Under these cireumstances, I do not believe the district court exceeded its discretion in its treatment of the transcript. Therefore, I would affirm.

 For example, here the majority emphasized that "there was no suggestion that the unofficial transcript was inaccurate in any respect'' in support of its conclusion that the district court should have permitted Fox Construction to obtain the official version after the ruling against it. Supra 49. But there was no reason for Taylor Electric to challenge the accuracy of the tran *826 script if it was inadmissible. Thus, in focusing on the issue actually addressed by Fox Construction-whether the unofficial transcript was admissible-Taylor Electric did not make an argument it might have made had it known that the district court would be obligated to give Fox Construction the chance to obtain an official transcript after ruling on the motion to strike.

. On appeal, Fox Construction focuses almost exclusively on the admissibility of the unofficial transcript. Only in passing does it suggest that "[the court below could have ordered a 'certified' transcript to be made if there was a real doubt about the accuracy of the transcript" and that "the court could have, and likely should have granted an opportunity for the defendant to obtain an official transcript ... if it really believed the evidence provided by Ms. Cox to be somehow inherently unreliable." These points were not argued as a ground for reversal but were simply made in support of Fox Construction's argument that the unofficial transcript should have been admitted when there was no indication that it was unreliable. In addition to the reasons discussed above, I do not believe we should reverse to give Fox Construction a second bite at the apple when even Fox Construction has not articulated an argument for reversal on this ground.